## IN THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

RICHARD ALEXANDER,
individually and on behalf of a
classes of others similarly situated,

Case No.

    2:22-CV-254-RWS

                Plaintiff,

**JURY TRIAL DEMANDED**

    v.

DYNASTY MARKETING GROUP,
LLC, d/b/a Dynasty Vacation Club,


                Defendant.


## CLASS ACTION COMPLAINT

## PRELIMINARY STATEMENT

1.      According to the Federal Trade Commission's ("FTC") December

2021 Biennial Report to Congress, the emergence of new communications

technologies has caused the number of illegal telemarketing calls to explode in

recent years. Consumer complaints to the FTC about illegal calls have skyrocketed

over the last 10 years, growing from about 63,000 per month in 2009 to an average

of over 300,000 per month in 2021.

2.      The sheer volume of illegal telemarketing overwhelms the

enforcement efforts of government agencies such as the FTC and the Federal

Communications Commission. Consequently, private consumer enforcement actions play a critical role in combatting illegal telemarketing.

3.      Like millions of Americans, Plaintiff Richard Alexander ("Alexander") has listed his telephone number on the National Do Not Call Registry ("DNC") for years, thus marking his number as off-limits for telemarketing sales calls under state and federal law. And like millions of Americans, Alexander receives unwanted telemarketing calls anyway. Here, despite listing his number on the DNC Registry, Defendant Dynasty Marketing Group, LLC d/b/a Dynasty Vacation Club ("DVC"), placed numerous calls to Alexander to sell him a vacation package. And although Alexander repeatedly told these agents to stop calling, the calls continued because Defendant failed to maintain adequate policies to ensure that its agents honor these requests.

4.      Alexander is not alone in receiving these calls from DVC. In May of 2021, around the same time Alexander was receiving these unwanted calls, Marriott filed a lawsuit against DVC. Marriott alleged that DVC had reached millions of consumers through robocalling, claiming to be selling vacation packages on behalf of Marriott, when in fact, they were engaging in a bait-and-switch by routing these customers to non-Marriott hotels. *See Marriott International, Inc. v. Dynasty Marketing Group LLC, et al.*, 1:21-cv-00610-AJT-JFA, ECF Dkt. No. 22 (May 17, 2022) (Amended Complaint).

5.     Alexander brings this action under the federal Telephone Consumer Protection Act ("TCPA") and Georgia's state law TCPA counterpart on behalf of others who, like him, received DVC's telemarketing calls placed (1) using artificial or prerecorded voice messages, (2) to numbers on the DNC Registry, (3) to numbers on a company's internal do not call list, (4) despite specifically telling DVC to stop calling.

6.     Class action procedures are especially appropriate to enforce the TCPA. The statute's "simple and administrable" provisions, the "obvious attempt [by Congress] to vindicate the public interest" through the statute's private enforcement provisions, and the overarching congressional intent "to allow consumers to bring their claims at modest personal expense" all combine to "make TCPA claims amenable to class action resolution." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019).

**PARTIES**

7.     Plaintiff Richard Alexander is a natural person and was a resident of Flowery Branch, Georgia at the time that he received the calls at issue. At all relevant times, Plaintiff was the subscriber and user for the residential cellular telephone number that received the calls at issue.

8.     Defendant Dynasty Marketing Group d/b/a Dynasty Vacation Club has its headquarters in Orlando, Florida. DVC also conducts business in Georgia by promoting timeshare vacation packages in Georgia.

9.     DVC conducts business throughout the United States, including within this District, through robocall campaigns directed to persons in Georgia and in other states. DVC purposefully avails itself of the privileges and benefits of Georgia law by selling telemarketing vacation packages via robocalls to residents of this District.

### JURISDICTION & VENUE

10.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. because this action alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.

11.     The state law claims arise from the same set of facts and circumstances as the federal claims. They are based upon the same illegal telephone calls.

12.     Additionally, the Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Further, Plaintiff alleges nationwide Classes, which

4

will result in at least one member of each Class residing in a state different from Defendant.

13.    DVC is subject to personal jurisdiction in Georgia because this suit arises out of and relates to DVC's contacts with this State.

14.    Personal jurisdiction is proper over DVC because it called or are otherwise responsible for calling, through the actions of its agents, Plaintiff in this District as part of the nationwide telemarketing campaign alleged herein.

15.    Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because DVC is a resident of this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including DVC's purposeful efforts to generate business in this District through the illegal telemarketing to which Plaintiff's claims relate.

## STATUTORY BASIS FOR THE CLAIMS

16.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227) ("TCPA").

17.     The statute was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

18.     As the Supreme Court recently stated, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, 140 S.Ct. 2335, at 2343 (2020).

19.     Unwanted robocalls have risen exponentially since the statute was enacted. According to online robocall tracking service YouMail, 3.3 billion robocall were placed in June 2020 alone, at a rate of 111.2 million per day. YOUMAIL, *Robocall Index*, www.robocallindex.com (last visited July 28, 2020).

20.     The FCC also has received an increasing number of complaints about unwanted calls, with 232,000 complaints in 2018 to over 290,000 calls in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

### *With limited exceptions, the TCPA prohibits telemarketing calls to numbers on the National Do-Not-Call Registry*

21.     In 2003, the FTC established the National Do-Not-Call Registry, which allows consumers to opt out of receiving telemarketing calls by putting their

number on the DNC Registry. The DNC Registry is "wildly popular with consumers" and, as of September 30, 2021, has over 244 million active registrations.[1]

22.     Once a residential telephone number is placed on the Registry, the request not to receive calls must be "honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200 (c)(2).

23.     The TCPA prohibits telemarketers from making more than one telephone solicitation call in any twelve-month period to any number listed on the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

---

[1] Fed. Trade Comm'n, *Do Not Call* (Nov. 2021), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2021/dnc_data_book_2021.pdf; Fed. Trade Comm'n, *2021 Biennial Rep. to Congress* (Dec. 2021),  available at https://www.ftc.gov/system/files/documents/reports/biennial-report-congress-under-do-not-call-registry-fee-extension-act-2007/p034305dncreport.pdf.

### *The TCPA prohibits telemarketing calls to persons on a seller's internal do-not-call list*

24.     The TCPA also requires companies to maintain internal do-not-call lists. The TCPA's regulations provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). Such procedures must meet the standards delineated in the regulation. *Id.*

25.     The FCC held long ago that internal do-not-call requests must be tracked and honored among and between a seller and its various telemarketers:

> Once the consumer makes a company specific do-not-call request, whether to the company or third party, the company and its third party telemarketer may not call the consumer again on behalf of that company to make a telephone solicitation regardless of whether the consumer continues to do business with the company.

*In re TCPA*, 20 FCC Rcd. 13664, 13668 ¶ 7 (2005); *accord U.S. v. Dish Network, LLC*, 954 F.3d 970, 976 (7th Cir. 2020) (sellers and their telemarketers must "coordinate" internal DNC lists under the FTC's Telemarketing Sales Rule, which is substantially identical to the TCPA); *cf.* 47 C.F.R. § 64.1200(d)(6) (DNC requests "must be honored for 5 years").

26.     Under the TCPA, "the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do not call

8

request." 47 C.F.R. § 64.1200(d)(3). All telemarketing calls are prohibited unless there is an instituted, written policy reasonably designed to prevent calls to those who request not to receive them.

27.    The TCPA's internal do-not-call rules require that sellers and their telemarketers honor consumer requests not to receive telemarketing calls. 47 C.F.R. § 64.1200(d). Any request not to be called must be shared among the seller (here, DVC) and any entities that generate business for the seller through outbound calls. In other words, a request to one vendor must be "coordinated" to prevent all telemarketing calls on behalf of that seller. *In re TCPA*, 20 FCC Rcd. 13664, 13664-65 ¶ 1 (2005).

### *The TCPA prohibits prerecorded calls to all numbers without written consent*

28.    Additionally, the TCPA prohibits all calls using an artificial or prerecorded voice without the recipient's prior express consent, or so-called "robocalls." *See* 47 U.S.C. § 227(b)(1)(A) & (B).

29.    The FCC has explained that prerecorded calls are prohibited absent prior express consent because, as Congress found, prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and they can be costly and inconvenient for the consumer.

30.    Prior express consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 464.1200(f)(8).

**31.**    Persons who receive calls in violation of these provisions of the TCPA may sue to recover the greater of the monetary loss caused by the violation, or $500. 47 U.S.C § 227(b)(3). If the Court finds a caller has willfully or knowingly violated the TCPA, it may increase the award to up to $1,500 per violation. *Id.*

### The TCPA imposes vicarious liability for calls placed by third parties

32.    Because allowing an entity "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013

FCC Ruling"); *see also Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 659-661 (4th Cir. 2019) (affirming class certification and jury finding that Dish Network was vicariously liable for violations of federal do-not-call law committed by its dealer).

### The Georgia Telemarketing No-Call List also prohibits calls to persons who register their numbers on the National DNC

33.     The Georgia General Assembly also recognized that "[m]any citizens of this state are outraged over the proliferation of nuisance calls from telemarketers" and sought to tackle the "intrusive and relentless invasion of the privacy and peacefulness of individuals" by these telemarketers. Ga. Code Ann. § 46-5-27(a)(4)-(5).

34.     To protect consumers from these harassing calls, on July 1, 1998, the Georgia General Assembly enacted a No-Call List program that permitted consumers to pay a small fee to register their number on a list. The law prohibited telephone solicitations to be made to any telephone number on the No-Call List. Ga. Code Ann. § 46-5-27(c).

35.     Telemarketers who called these registered numbers without prior express permission faced up to $2,000 in penalties per call. Ga. Code Ann. § 46-5-27(i).

36.     With the establishment of the Federal Do Not Call Registry in 2003, Georgia merged its registrants with the Federal DNC. Those who sought to be on

Georgia's No-Call List were directed to register their phone number with the Federal DNC.[2]

## FACTUAL BASIS FOR THE CLAIMS

37.     Plaintiff registered his residential cell phone number with the National Do Not Call Registry on February 23, 2015.

38.     Between April 13, 2021 and May 26, 2021, Alexander received twenty-seven phone calls from the phone number (334) 231-3783.

39.     The calls played a prerecorded message, promoting a vacation package and/or timeshare deal at hotels.

40.     During the first call (April 13, 2021), Alexander asked DVC to stop calling him.

41.     Nonetheless, Alexander continued to receive calls from DVC for several months.

42.     In 2022, DVC called Alexander on April 13, 16, 21, 26, 27, and 28, and May 6, 7, 10 12, 13, 18 (3 calls), 19 (2 calls), 20, 24 (2 calls), 25, and 26 (2 calls).

43.     Alexander answered the April 13, and May 6, 7, 10, 17, and 19.

---

[2] GEORGIA CONSUMER PROTECTION DIVISION, DO NOT CALL LAW, https://consumer.georgia.gov/consumer-topics/do-not-call-law (last visited November 30, 2022).

44.     He also called DVC back on April 26, May 10, and May 12 to tell them to stop calling him.

45.     During one of the calls, Alexander asked for the identity of the caller and address, to which the caller responded that it was a representative of "Dynasty Vacation Club" and provided the address of 773 South Kirkman Road, Orlando, FL 32811.

46.     Alexander sent a demand letter on May 14, 2021, asserting his rights under the TCPA for statutory damages for the calls made in violation of the TCPA.

47.     DVC did not respond to the letter but continued to call him until May 26, 2021.

48.     The calls Plaintiff received were made using a predictive dialer or other device that automatically selects phone numbers for calling. There was a telltale beep at the beginning of the calls Plaintiff received. On some calls, when Plaintiff answered, there was a long pause, then a rote tone, and then the caller dropped the call, known also as  "dead air" calls.

49.     Plaintiff received these improper calls because of DVC's failure to maintain company-specific internal do not call policies, practices, and procedures that satisfy the TCPA.

50.     Because DVC's policies, practices, and procedures do not comply with the TCPA, there are undoubtedly others who, like Plaintiff, have received

telemarketing calls by or on behalf of Defendant, after they requested not to receive such.

51.     DVC knows or should have known that its internal do-not-call policies fail to ensure its agents comply with DVC's internal do-not-call list.  DVC thus knew or should have known that Plaintiff were likely to receive additional calls on its behalf from its agent. DVC also knows that their internal do-not-call policies do not comply with the TCPA. Nevertheless, DVC has not changed its policies, practices, or procedures to bring them into compliance on this point.

52.     DVC had the ability to control the minutiae of its internal do-not-call compliance, but recklessly or knowingly failed to do so, instead electing to turn a blind eye and continued to make the illegal sales calls.

53.     Plaintiff has been damaged by the actions and omissions alleged here. They were forced to deal with telemarketing calls they did not consent to, and that they affirmatively requested not to receive. Their phones were temporarily seized, and the calls were a nuisance, annoying, wasted time, and represent a public safety threat.

## THE CLASS ACTION CLAIMS

54.     As authorized by Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff also brings this action on behalf of the following Classes:

    a.      Do Not Call Class (DNC Class)

All persons in the United States to whom more than one call (1) was made for the purpose of encouraging the purchase of DVC's services in any 12-month period since the date four years prior to the filing of this action, (2) to a residential telephone number, (3) where the phone number was registered on the National Do Not Call Registry for more than 31 days, and (4) where DVC lacks any signed, written agreement with the recipient stating that he or she agrees to be contacted by DVC at the phone number.

      b.    Internal Do Not Call Class (Internal DNC Class)

All persons in the United States to whom more than one call (1) was made for the purpose of encouraging the purchase of DVC's goods or services in any 12-month period since the date four years prior to the filing of this action, (2) to a residential telephone number, (3) where the phone number was or should have been on DVC's do-not-call list at the time of at least one such call.

      c.    Artificial or Prerecorded Voice Class ("Prerecorded Class")

All persons within the United States who, within four years prior to the filing of this action, (1) received a call from or on behalf of DVC, (2) to the person's residential or cellular telephone, (3) using an artificial or prerecorded voice, (4) without prior express consent.

      d.    Georgia Do Not Call Class (Georgia DNC Class)

All persons in the United States to whom more than one (1) telephone solicitation was made, (2) to any residential, mobile or wireless subscriber in the state of Georgia, (3) to a telephone subscriber that is listed on the Federal Trade Commission's National Do Not Call Registry.

55.    Plaintiff is a member of each Class.

56.    **Numerosity**. Upon information and belief, illegal calls were made by or on behalf of DVC to telephone numbers belonging to numerous recipients,  as high-volume calling is a hallmark of any robocall campaign. Class members,

therefore, are believed to be so numerous that joinder of all members is impracticable.

57.     The identity of the Class members is, on information and belief, readily identifiable from DVC's calling records.

58.     **Commonality.** The claim raises many questions of law and fact common to all members of the Classes, and those questions predominate over questions that may affect any individual member of the Classes, including Plaintiff. Such questions common to the Classes include but are not limited to:

   a.   Whether DVC made, or caused to be made, illegal telephone calls to Plaintiff and the members of the Classes;

   b.   Whether DVC's DNC practices, policies, and procedures comply with the TCPA;

   c.   Whether DVC kept an internal DNC list;

   d.   Whether DVC engaged in prerecorded calls without implementing adequate internal policies and procedures for maintaining an internal do not call list;

   e.   Whether DVC's conduct violates the TCPA and Georgia's No-Call List statute;

   f.   Whether DVC should be held liable for any calls made by third parties; and

   g.   Damages, including whether DVC's violations were willful or knowing such as to justify treble damages under 47 U.S.C. § 227(c)(5).

59.     **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Classes. The factual and legal bases of DVC's liability to Plaintiff and the other members of the Classes are the same: DVC violated the TCPA by causing the phone number of each member of the Classes, including Plaintiff, to be called repeatedly within a twelve-month period despite prior requests to stop while using a prerecorded message, despite being on the National Do Not Call Registry, and/or without having instituted proper internal DNC procedures required under the TCPA.  There are no defenses that DVC may have that are unique to Plaintiff. Plaintiff has fulfilled all conditions precedent to bring this lawsuit.

60.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the member of the Classes. Plaintiff has no interests that might conflict with the interests of the Classes. Plaintiff is interested in pursuing these claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged.

61.     **Predominance.** There are questions of law and fact common to class members that predominate over any questions affecting only individual members. All class members received telemarketing phone calls from the Defendant, DVC, in violation of the TCPA and Georgia state law. The common questions in the litigation, such as the ones listed above, would need to be decided for all class members. Individual questions by class members are unlikely to arise given that all

of the claims arise from the Defendant's conduct and no individual inquiry is necessary to determine that the violation occurred. Therefore, there are no interest of members in the class to individually control the prosecution of separate claims and defenses. Damages for these claims are also defined by statute and the considerations on the amount each member should receive would be applicable across each class.

62.     **Superiority.** Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, thousands of members of the Classes, such that joinder of all members is impracticable.

63.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent or varying adjudications, and/or incompatible standards of conduct for DVC. For example, one court might enjoin DVC from performing the challenged acts, whereas another might not.

64.     The prosecution of separate actions by members of the Classes would also create a risk that adjudications concerning individual members of the class would as a practical matter be dispositive of the interest of other members of the

class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests. For example, a ruling on the common questions of fact and law, such as DVC's liability based on their robocall telemarketing campaign, would likely affect similarly situated individuals even if the action was brought separately.

65.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

66.    DVC has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making relief appropriate with respect to the Classes as a whole. DVC's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenges of those practices hinges on DVC's conduct regarding the Classes as wholes, not on facts or law applicable only to Plaintiff Alexander.

67.    Prosecution of separate actions by individual members of the Classes, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications regarding individual members of the Classes that would establish incompatible standards of conduct.

68.     Additionally, the damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by DVC's actions. Thus, it would be virtually impossible for members of the Classes to obtain effective relief from DVC's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

As far as Plaintiff is aware, there are no other pending litigation based on TCPA and the FTSA claims against the Defendant.  There is also a desire to litigate these claims in this Court because this is where DVC is headquartered.

## LEGAL CLAIMS

### Count One
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (on behalf of Plaintiff and the DNC Class)

69.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

70.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

71.     DVC violated the TCPA by, directly or through its agents, initiating multiple telephone solicitations Plaintiff and the National DNC Class in a 12-

month period, despite the person's registration of his or her telephone number on the National Do Not Call Registry.

DVC also violated the TCPA by failing to adhere to its own policies concerning the DNC.

72.     These violations were willful or knowing.

73. As a result of DVC's violations of the TCPA's national do-not-call rule, Plaintiff and the other members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

Because such violations were willful or knowing, the Court should treble statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

74.     For this claim, Plaintiff seeks the following relief for himself and members of the DNC Class:

   a.     Certification of the DNC Class as alleged herein, the appointment of Plaintiff as the representative of the DNC Class and Plaintiff's counsel as Counsel for the DNC Class;

   b.     Damages, pursuant to 47 U.S.C. § 227(c)(5);

   c.     A declaration that DVC violated the TCPA as to Plaintiff and the DNC Class;

  d.  Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at

     ensuring the prevention of future TCPA violations;

  e.  Attorneys' fees and costs, as permitted by law; and

  f.  Such other or further relief as the Court deems just and proper.

**Count Two**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(on behalf of Plaintiff and the Internal DNC Class)**

75. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

76. The TCPA requires any party that is engaged in telemarketing — including "sellers" who do not make calls themselves — to maintain and honor a written internal do-not-call policy.  47 U.S.C. § 227(c); 47 CFR § 61.1200(d).

77. DVC's written do not call policy and procedures, are insufficient to ensure compliance with the TCPA's internal Do Not Call rules.

78. DVC's policy and procedures permit calls to phone numbers on the internal DNC list, even if the recipient of the call has indicated that they do not "consent."

79. DVC's policy and procedures do not have adequate or any compliance training for the TCPA or maintaining an internal DNC.

80.     DVC violated the TCPA by not having sufficient internal DNC policies, by not following or honoring the policies that it did have, and by not sufficiently ensuring those making the calls on its behalf did the same.

81.     Plaintiff and Class members each received more than one call in violation of these rules within a twelve-month period, and a cause of action under 47 U.S.C. § 227(c)(5) has therefore accrued.

82.     As a result of these violations, Plaintiff and the TCPA Internal DNC Class were damaged by DVC's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy, after having requested that calls stop.

83.     For this claim, Plaintiff seeks the following relief for himself and members of the Internal DNC Class:

a.     Certification of the TCPA Internal DNC Class as alleged herein, and the appointment of Plaintiff as the representative of the TCPA Internal DNC Class and Plaintiff's counsel as Counsel for the TCPA Internal DNC Class;

b.     A declaration that DVC violated the TCPA as to Plaintiff and the TCPA Internal DNC Class;

c.     Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at ensuring the prevention of future TCPA violations;

d.     Damages pursuant to 47 U.S.C. § 227(c)(5);

e.     Costs, expenses, and attorneys' fees, to the extent permitted by

law; and

f.     Such other or further relief as the Court deems just and proper.

**Count Three**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and Artificial or Prerecorded Voice Class)**

84.    Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

85.    With respect to the calls described above, DVC, either directly or through the actions of others, by making calls to Plaintiff and all other members of the Prerecorded Class's residential and cellular telephone lines using an artificial or prerecorded voice. *See* 47 U.S.C. §§ 227(b)(1)(A)(3) and (B).

86.    DVC's violations were willful and/or knowing.

87.    For this claim, Plaintiff seeks the following relief for himself and on behalf of the Prerecorded Class for:

a.     Certification of the Prerecorded Class as alleged herein, the

appointment of Plaintiff as the representative of the Prerecorded

Class and Plaintiff's counsel as Counsel for the Prerecorded

Class;

b.     Damages, pursuant to 47 U.S.C. § 227(c)(5);

24

c.      A declaration that DVC violated the TCPA as to Plaintiff and

the TCPA Prerecorded Class;

d.      Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at

ensuring the prevention of future TCPA violations;

e.      Attorneys' fees and costs, as permitted by law; and

f.      Such other or further relief as the Court deems just and proper.

**Count Four**
**Violations of the Georgia Telemarketing No-Call List**
**(on behalf of Plaintiff and the Georgia DNC Class)**

88.    Plaintiff re-alleges and incorporates the foregoing allegations as if

fully set forth herein.

89.    It is a violation of the Georgia Telemarketing No-Call List law to

initiate any telephone solicitation to a residential telephone subscriber who has

registered his or her telephone number on the National Do Not Call Registry.

90.    DVC violated the Georgia Telemarketing No-Call List law by,

directly or through its agents, initiating multiple telephone solicitations Plaintiff

and the National DNC Class in a 12-month period, despite the person's registration

of his or her telephone number on the National Do Not Call Registry.

91.    These violations were willful or knowing.

92.    As a result of DVC's violations of the Georgia Telemarketing No-Call

List law, Plaintiff and the other members of the Georgia DNC Class are each

entitled to an injunction and up to $2,000 in damages for each such violation. Ga. Code Ann. § 46-5-27(i).

93.    For this claim, Plaintiff seeks the following relief for himself and members of the Georgia DNC Class:

    a.    Certification of the Georgia DNC Class as alleged herein, the appointment of Plaintiff as the representative of the Georgia DNC Class and Plaintiff's counsel as Counsel for the Georgia DNC Class;

    b.    Damages, pursuant to Ga. Code Ann. § 46-5-27(i);

    c.    A declaration that DVC violated the Georgia Telemarketing No-Call List law as to Plaintiff and the Georgia DNC Class;

    d.    Injunctive relief, pursuant to Ga. Code Ann. § 46-5-27(i), aimed at ensuring the prevention of future Georgia Telemarketing No-Call List law;

    e.    Attorneys' fees and costs, as permitted by law; and

    f.    Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: December 29, 2022

Respectfully submitted,

Alexander, individually and on behalf of classes of others similarly situated

By*:   /s/ James Matthews*
    James B. Matthews, III
    Georgia State Bar No. 477559
    Robert S. Huestis
    Georgia State Bar No. 374740
    Amy S. BeMent
    Georgia State Bar No. 423065
    Blasingame, Burch, Garrard &
    Ashley, P.C. 440 College Ave.
    Suite 320
    Athens, GA 30601
    Telephone: (706) 354-4000
    Fax: (706)549-3545
    jmatthews@bbga.com


John W. Barrett*
Email: jbarrett@baileyglasser.com
Panida A. Anderson*
panderson@baileyglasser.com
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St. NW,
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Fax: (202) 463-2109

*Counsel for Plaintiff*

*pending *pro hac vice* admission